

**DANIEL MAJOR EDSTROM SR.**
2690 Brown Bear Court
Cool, CA 95614
Ph.: (916) 207-6706
E-mail: dmedstrom@hotmail.com

Debtor-in-possession

FILED

JUL - 8 2016

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

**UNITED STATES BANKRUPTCY COURT**

**IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

In re:

DANIEL MAJOR EDSTROM SR.,

Debtor in Possession

) CASE NO. 2016- 24451-B-11
) DC No. DME-1
)
) Date:
) Time:
) Courtroom No.: 32
) Judge: Hon. Christopher D. Jaime
)
) United States Courthouse
) 501 I Street, 6th Floor
) Sacramento, CA 95814
)

**PLAN OF REORGANIZATION OF DANIEL MAJOR EDSTROM SR.
DATED AND FILED JULY 8, 2016**

## Table of Contents

**ARTICLE I - SUMMARY** ........................................................................................ 2

**ARTICLE II - DEFINITIONS** ................................................................................. 3

**ARTICLE III – CLASSIFICATION AND TREATMENT OF CLAIMS** ............................. 6

**ARTICLE IV – TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS. U.S.
TRUSTEE FEES, PROFESSIONAL FEES, AND PRIORITY TAX CLAIMS** .................. 11

**ARTICLE V – PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED
LEASES** .............................................................................................................. 12

**ARTICLE VI – MEANS FOR IMPLEMENTATION OF THE PLAN** .............................. 13

**ARTICLE VII – GENERAL PROVISIONS**..................................................................... 15

**ARTICLE VIII – DISCHARGE** ....................................................................................... 21

## ARTICLE I - SUMMARY

This Plan of Reorganization dated and filed July 8, 2016 (the "Plan") under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") proposes to pay the creditors of Daniel Major Edstrom Sr., the abovecaptioned Debtor-in-possession (the "Debtor" or "Debtors") from the reorganization of all future income of Debtor.

This Plan divides the creditors whose claims existed prior to the bankruptcy filing date, July 8, 2016, into nine (9) separate classes, which consist of one (1) class (Class 1) that is an unimpaired secured claim secured by a life insurance policy commonly described as State Farm Insurance Whole Life Policy, and seven (7) classes (Classes 2 through 8) that are unimpaired unsecured classes, which consist of Class 2 of Auburn Lake Trails POA, Class 3 of Capital One, Class 4 of Credit One, Class 5 of Merrick Bank, Class 6 of Myron Corporation, Class 7 of Jan van Eck, and Class 8 of Kevin Saitta. Finally, Class 9 consists of unimpaired general unsecured claims of the Debtor. In the opinion of Debtor, none of the classes are impaired within the meaning of 11 U.S.C. § 1124. There are no known creditors holding any *allowed* Class 9 claims[1]. The following Plan also provides for the vesting in Debtor of the property of this bankruptcy estate (Class 10).

The following Plan also provides for the treatment of administrative expense claims and priority tax claims, although all such claims, pursuant to 11 U.S.C. § 1123(a)(1), are not placed into any class(es). For clarity, each of these is set forth individually in Article IV of this Plan.

Debtor is not currently involved in litigation.

All creditors should refer to Articles III through V of this Plan for information regarding the precise treatment of their claims. A Disclosure Statement that provides more detailed

---

[1] Debtor scheduled one Class 9 claimant as disputed, which consists of a fraudulent credit card purchase

information regarding this Plan and the rights of creditors was circulated with this Plan. Your rights may be affected. You should read these papers carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.

## ARTICLE II - DEFINITIONS

2.1 **"Allowed Claim"** shall mean a Claim (a) in respect of which a proof of claim has been filed with the court within the applicable period of limitation fixed by Bankruptcy Rule 3001; or (b) scheduled in the List of Creditors or Schedules prepared and filed with the court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent or un-liquidated as to amount, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or an order of the court, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

2.2 **"Allowed Interest"** shall mean an Interest (a) in respect of which a proof of interest has been filed with the court within the applicable period of limitation fixed by Rule 3001; or (b) scheduled in the list of equity security holders prepared and filed with the court pursuant to Rule 1007(b), in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or an order of the court, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

2.3 **"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest or other charge against or interest in property in which Debtor has an interest, or which is subject to setoff under Section 553 of the Code to the extent of the value (determined in accordance with Section 506(a) of the Code) of the interest of the holder of such Allowed Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

2.4 "**Claim**" shall mean any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment against Debtor in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, un-liquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, beneficial, secured or unsecured.

2.5 "**Class**" shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article III hereof.

2.6 "**Code**" shall mean the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. and any amendments thereof.

2.7 "**Confirmation Date**" shall mean the date upon which the Order of Confirmation is entered by the court.

2.8 "**Court**" shall mean the United States Bankruptcy Court for the Eastern District of California, in which the Debtor's Chapter 11 case, pursuant to which the Plan is proposed, is pending, and any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

2.9 "**Creditor**" shall mean any person or entity that has a claim against the debtor.

2.10 "**Debtor**" or "**Debtors**" shall mean Daniel Major Edstrom, Sr.

2.11 "**Effective Date**" shall mean the fifteenth business day following the date of the entry of the confirmation order. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

2.12 "**Indebtedness**" as applied to the Debtor shall mean:

(a) all indebtedness or other obligations of the Debtor for borrowed money for the deferred purchase price of property or services.

(b) all indebtedness of the Debtor, contingent, direct or otherwise, secured (or for which the holder of such indebtedness has an existing right contingent or otherwise to be secured) by any mortgage, pledge, lien, security interest or vender's interest under any condition-

al sale or other title retention agreement existing on any property or asset owned or held by the Debtor, whether or not the indebtedness secured thereby shall have been assumed by the Debtor (hereinafter "Secured Indebtedness"); or

(c) all indebtedness of others, secured or unsecured, directly or indirectly guaranteed, endorsed, or discounted with recourse by the Debtor, or in respect of which the Debtor is otherwise directly or indirectly liable, including without limitation, indebtedness in effect guaranteed by the Debtor through any agreement (contingent or otherwise) to purchase, repurchase or otherwise acquire such indebtedness or any security therefore, or to provide funds for the payment or discharge of such indebtedness or of any other liability of the obligor of such indebtedness (whether in the form of loans, advances, stock purchases, capital contributions or otherwise), or to maintain the solvency or any balance sheet or other financial condition of the obligor of such indebtedness, or to make payment for any products, materials or supplies or for any transportation or services regardless of the non-delivery or non-furnishing thereof.

2.13 **"Net Income"** shall have the same definition as is used on Schedule J of the Official Bankruptcy Forms, specifically line 20.c.

2.14 **"Order of Confirmation"** shall mean the order entered by the court confirming the Plan in accordance with the provisions of Chapter 11 of the Code which order is no longer subject to appeal or certiorari proceeding or as to which no appeal or certiorari proceeding is pending.

2.15 **"Person"** shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

2.16 **"Petition Date"** shall mean July 8, 2016 the date on which Debtor filed his Chapter 11 petition with the court.

2.17 **"Plan"** shall mean this Chapter 11 Plan dated July 8, 2016.

2.18 **"Rules"** shall mean the Bankruptcy Rules, as amended and supplemented by the Interim Bankruptcy Rules (and local bankruptcy rules) as adopted by the court.

2.19 "**Secured Creditor**" shall mean any creditor who holds a claim against the Debtor secured by a lien, security interest or other encumbrance which has been properly attached and perfected as required by law with respect to property of the estate, or who holds a claim that is subject to setoff under Section 553 of the Code to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be.

2.20 Undefined Terms and Section Numbers. A term used, but not defined, in this Plan, but defined in the Code has the meaning given to that term in the code, unless the context clearly indicates or requires otherwise. References in this Plan Including Disclosure Statement Information to a code section are references to the Code, except as otherwise indicated.

## ARTICLE III – CLASSIFICATION AND TREATMENT OF CLAIMS

3.1 Class 1 (not impaired):

(a) A Secured Claim held by Creditor State Farm Insurance, in the amount of $ 22,496.65, for a Secured Claim secured by Debtors' Life Insurance Policy commonly described as State Farm Insurance Whole Life Insurance Policy # xx-xxxx-0759 (the "Policy").

(b) State Farm Insurance Company shall have an Allowed Secured Claim in the amount of $ 22,496.65. The Debtor shall pay State Farm Life Insurance Company the sum Twenty-Two Thousand Four Hundred Ninety-Six Dollars and sixty-fifty cents ($ 22,496.65), at a fixed rate of Eight percent (8.00%) for approximately 10 years, strictly pursuant to the original prep-etition agreements. This account is not currently delinquent and Debtor will provide payments pursuant to the original agreement. If there is any conflict between the terms of Debtors plan and the pre-petition agreement, the pre-petition agreement governs. The payment terms, the terms, conditions and covenants of the original agreement and related security agreement shall not be modified. State Farm Insurance shall retain its lien on Debtors Life Insurance Policy until paid in full as provided in the Plan.

(c) Consequent to and consistent with subsections 3.1(a) and (b), Debtor shall pay to Creditor State Farm Insurance, as Debtors' provision for its Class 1 claim, as specified in the

agreement and related security agreements in existence prior to the petition Date, $272.95 per month.

3.2 Class 2 (not impaired):

(a) An unsecured Claim held by Creditor Auburn Lake Trials POA, in the amount of $ 865.12, with account number # xxxx877 (the "HOA").

(b) Auburn Lake Trails POA shall have an Allowed Unsecured Claim in the amount of $ 865.12. The Debtor shall pay Auburn Lake Trails POA the sum of Eight Hundred Sixty-Five Dollars and Twelve cents ($865.12), together with interest on the unpaid principal at a fixed rate of ten percent (10.0%) in 5 equal yearly installments commencing the first day of the twelfth full month following the Effective Date, and continuing on the first day of each twelfth month thereafter until the new maturity date. Interest shall be calculated on a 365-day year. With exception of the modification of the payment terms, the terms, conditions and covenants of the related governing documents (i.e. CC&R's) shall not be modified. Auburn Lake Trails POA shall be paid in full as provided in this Plan.

(c) Consequent to and consistent with subsections 3.2 (a) and (b), Debtor shall pay to Creditor Auburn Lake Trails POA, as Debtor's provision for its Class 2 claim, over the course of 4 years, $228.22 per year, with a final payment of $207.47 in the fifth year.

3.3 Class 3 (not impaired)

(a) An Unsecured Claim held by Creditor Capital One, in the amount of $956.44, with account #xxxx3922 ("CapOne").

(b) Capital One shall have an Allowed Unsecured Claim in the amount of $956.44. The Debtor shall pay Capital One the sum of Nine Hundred Fifty-six Dollars and Forty-Four cents ($956.44), at a fixed rate of twenty-four and ninety-nine hundredths percent (24.99%) in 5 equal yearly installments commencing the first day of the twelfth full month following the Effective Date, and continuing on the first day of each twelfth month thereafter until the new maturity date. Interest shall be calculated on a 365-day year. With exception of the modification of the payment terms, the terms, conditions and covenants of the related governing documents

(i.e. Credit card agreements) shall not be modified. Capital One shall be paid in full as provid-ed in this Plan.

(c) Consequent to and consistent with subsections 3.3 (a) and (b), Debtor shall pay to Creditor Capital One, as Debtors' provision for its Class 3 claim, over the course of 4 years, $355.58 per year, with a final payment of $284.48 in the fifth year.

3.4 Class 4 (not impaired)

(a) An Unsecured Claim held by Creditor CreditOne Bank, in the amount of $456.54, with account #xxxx4724 ("CreditOne").

(b) CreditOne Bank shall have an Allowed Unsecured Claim in the amount of $456.54. The Debtor shall pay CreditOne Bank the sum of Four Hundred Fifty-six Dollars and Fifty-Four cents ($456.54), at a fixed rate of twenty and fifteen hundredths percent (20.15%) in 5 equal yearly installments commencing the first day of the twelfth full month following the Ef-fective Date, and continuing on the first day of each twelfth month thereafter until the new ma-turity date. Interest shall be calculated on a 365-day year. With exception of the modification of the payment terms, the terms, conditions and covenants of the related governing documents (i.e. Credit card agreements) shall not be modified. CreditOne Bank shall be paid in full as provided in this Plan.

(c) Consequent to and consistent with subsections 3.4 (a) and (b), Debtor shall pay to CreditOne Bank, as Debtors' provision for its Class 4 claim, over the course of 4 years, $153.16 per year, with a final payment of $127.48 in the fifth year.

3.5 Class 5 (not impaired)

(a) An Unsecured Claim held by Creditor Merrick Bank, in the amount of $1,395.04, with account #xxxx9741 ("Merrick").

(b) Merrick Bank shall have an Allowed Unsecured Claim in the amount of $1,395.04. The Debtor shall pay Merrick Bank the sum of One Thousand Three Hundred Ninety-Five Dollars and Four cents ($1,395.04), at a fixed rate of twenty-five and seventy hundredths per-cent (25.70%) in 5 equal yearly installments commencing the first day of the twelfth full month

following the Effective Date, and continuing on the first day of each twelfth month thereafter until the new maturity date. Interest shall be calculated on a 365-day year. With exception of the modification of the payment terms, the terms, conditions and covenants of the related governing documents (i.e. Credit card agreements) shall not be modified. Merrick Bank shall be paid in full as provided in this Plan.

(c) Consequent to and consistent with subsections 3.5 (a) and (b), Debtor shall pay to Merrick Bank, as Debtors' provision for its Class 5 claim, over the course of 4 years, $526.20 per year, with a final payment of $418.62 in the fifth year.

3.6 Class 6 (not impaired)

(a) An Unsecured Claim held by Myron Corporation, in the amount of $55.79, with account #xxxx2471 ("Myron").

(b) Myron Corporation shall have an Allowed Unsecured Claim in the amount of $55.79. The Debtor shall pay Myron Corporation the sum of Fifty-Five Dollars and Seventy-Nine cents ($55.79), at a fixed rate of ten percent (10.00%) in 5 equal yearly installments commencing the first day of the twelfth full month following the Effective Date, and continuing on the first day of each twelfth month thereafter until the new maturity date. Interest shall be calculated on a 365-day year. With exception of the modification of the payment terms, the terms, conditions and covenants of the related governing documents (i.e. Purchase and Purchase Order agreements) shall not be modified. Myron Corporation shall be paid in full as provided in this Plan.

(c) Consequent to and consistent with subsections 3.6 (a) and (b), Debtor shall pay to Myron Corporation, as Debtors' provision for its Class 6 claim, over the course of 4 years, $14.72 per year, with a final payment of $13.38 in the fifth year.

3.7 Class 7 (not impaired)

(a) An Unsecured Claim held by Jan van Eck, in the amount of $1,200.00 ("JvE").

(b) Jan van Eck shall have an Allowed Unsecured Claim in the amount of $1,200.00. The Debtor shall pay Jan van Eck the sum of One Thousand Two Hundred Dollars and Zero

cents ($1,200.00), at a fixed rate of ten percent (10.00%) in 5 equal yearly installments commencing the first day of the twelfth full month following the Effective Date, and continuing on the first day of each twelfth month thereafter until the new maturity date. Interest shall be calculated on a 365-day year. With exception of the modification of the payment terms, the terms, conditions and covenants of the related governing documents (i.e. verbal agreements) shall not be modified. Jan van Eck shall be paid in full as provided in this Plan.

(c) Consequent to and consistent with subsections 3.7 (a) and (b), Debtor shall pay to Jan van Eck, as Debtors' provision for its Class 7 claim, over the course of 4 years, $ 316.56 per year, with a final payment of $ 287.78 in the fifth year.

3.8 Class 8 (not impaired)

(a) An Unsecured Claim held by Kevin Saitta, in the amount of $2,000.00 ("KS").

(b) Kevin Saitta shall have an Allowed Unsecured Claim in the amount of $2,000.00. The Debtor shall pay Kevin Saitta the sum of Two Thousand Dollars and Zero cents ($2,000.00), at a fixed rate of ten percent (10.00%) in 5 equal yearly installments commencing the first day of the twelfth full month following the Effective Date, and continuing on the first day of each twelfth month thereafter until the new maturity date. Interest shall be calculated on a 365-day year. With exception of the modification of the payment terms, the terms, conditions and covenants of the related governing documents (i.e. verbal agreements) shall not be modified. Kevin Saitta shall be paid in full as provided in this Plan.

(c) Consequent to and consistent with subsections 3.8 (a) and (b), Debtor shall pay to Kevin Saitta, as Debtors' provision for its Class 8 claim, over the course of 4 years, $527.59 per year, with a final payment of $479.63 in the fifth year.

3.9 Class 9 (not impaired)

(a) All general unsecured claims, other than Priority tax and non-dischargeable Claims [provided for in Section 4.3], of creditors whose unsecured claims arose in any manner prior to the filing of this bankruptcy case, are not accounted for in other classes of claims, or arose

from the rejection of an executory contract or lease prior to the rejection of the same. *There are currently no allowed undisputed Class 9 claims.*

(b) Class 9 claims will be paid 100% on the dollar at either 10% interest or the interest specified in the respective claimant's governing documents. Class 9 claim payments shall be made in 5 equal yearly installments commencing the first day of the twelfth full month following the Effective Date, and continuing on the first day of each twelfth month thereafter until the new maturity date. Interest shall be calculated on a 365-day year. With exception of the modification of the payment terms, the terms, conditions and covenants of the related governing documents (i.e. written contracts and/or verbal agreements, etc.) shall not be modified. Class 9 claims shall be paid in full as provided in this Plan.

(c) Consequent to and consistent with subsections 3.9 (a) and (b), Debtor shall pay to any Class 9 claimant, as Debtors' provision for its Class 9 claim, their applicable yearly installments over the course of 5 years.

3.10 Class 10 (not impaired):

(a) The Class 10 claim shall include Debtor's interest in the property of this bankruptcy estate, all of which property shall entirely vest in Debtor upon confirmation of this Plan.

(b) The Class 10 claim is unimpaired by this Plan.

**ARTICLE IV – TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS.**

**U.S. TRUSTEE FEES, PROFESSIONAL FEES, AND PRIORITY TAX CLAIMS**

4.1 Unclassified Claims. In accordance with 11 U.S.C. § 1123(a)(1), administrative expense claims and priority tax claims are not in classes.

4.2 Administrative Expense Claims. Costs and expenses of administration as defined and allowed 11 U.S.C. §§ 503, 507, for which application for allowance is made or a claim is filed, either prior to or after, the effective date of this plan, as the same are allowed, approved and ordered paid by this court. Administrative Expense Claims shall be paid in full on the Effective Date of this Plan, or when they are allowed, whichever occurs later, unless the administrative claimants agree otherwise.

4.3 Priority Tax Claims. Claims entitled to "priority," as such term is defined 11 U.S.C. § 507(a)(8), as the same are allowed, approved and ordered paid by the court. Priority Tax Claims shall be paid in full, with interest at four percent (4%), in three (3) equal installments, with each such installment, to be made yearly commencing the first day of the twelfth full month following the Effective Date of Debtor's Plan of Reorganization. Consequent to and consistent with this, Debtors shall pay to Creditor Internal Revenue Service its Priority Tax Claim of $ 992.42, over the course of 3 years at $357.62 per year[2], with the first such payment to be paid on or before December 1, 2017, such that the last such payment shall be paid, at the latest, on December 1, 2019, which is a date less than five (5) years following the July 8, 2016 petition date.

4.4 United States Trustee Fees. A quarterly fee shall be paid by Debtor to the United States Trustee, for deposit into the United States Treasury, for each quarter (including any fraction thereof) until this case is converted, dismissed, or closed by the entry of a final decree pursuant to 28 U.S.C. § 1930(a)(6). Debtor shall pay in full on the Effective Date of the Plan any amount owed by Debtor to the United States Trustee as of the Effective Date.

## ARTICLE V – PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1 All executory contracts and unexpired leases of the Debtor, under which the Debtor may owe a monetary obligation, which were not previously assumed or rejected under 11 U.S.C. § 365 with approval of this court, are hereby expressly rejected. To the extent that any present and/or future accounts receivable and present and/or future leases with tenants in which Debtor is lessor may be construed to be governed by 11 U.S.C. § 365, the same are expressly assumed under 11 U.S.C. § 365. Any claim for damages allegedly suffered or incurred by any person or entity who is a party to such rejected contracts or leases shall file a proof of Claim herein within thirty (30) days after the Effective Date of this Plan, and such Claim shall be treated as not impaired and Debtor will motion the Court to amend the Plan to include this

---

[2] The last payment (payment #3) is actually $343.86

Proof of Claim (pre confirmation or post confirmation depending on the timing for when the Proof of Claim is filed in the Claims Registry) as part of Class 9 general unsecured claims. Debtor reserves the right to object to any Proof of Claim, as described in section 7.9 of Article VII.

## ARTICLE VI – MEANS FOR IMPLEMENTATION OF THE PLAN

6.1 Source of Payments. The Debtor is an individual and currently changing his employment from a W-2 employee (majority of income) to income now generated through his business. Debtor worked as a W-2 employee of Mastech, Inc. on a contract for work that actually started on July 28, 2014 and ended on May 27, 2016. Debtor also conducts business through DTC Systems, Inc., Debtors corporation. While Debtor has been on a W-2 contract directly for most of the last 2 years, the great majority of Debtors income over the last 19 years has been through DTC Systems, Inc. Debtor incorporated DTC Systems (together with his non-filing spouse) in January 1997. Debtor expects to generate the majority of Debtors revenue through DTC Systems, Inc. Payments and distributions under the Plan will be funded by the Debtor as well as his non-filing spouse, based upon his projected monthly revenues as derived from the combination of all of his employment plus business activities, which projected amount at present is based on income realized by Debtor through the first 5 months of 2016. When Debtor's past employment income from Mastech, Inc. is considered together with his new business income, it is sufficient to (a) meet Debtors' ongoing necessary business and administrative expenses, (b) meet Debtors' ongoing personal living expenses, and (c) fully fund the Plan as proposed. Debtor, by way of his employment with Mastech, Inc. as a Microsoft SharePoint Architect and Developer, Debtor has generated substantial revenue, which as of June 2, 2016 consists of a total of $ 51,843 (or $ 8,640.50 for each month of January through June of 2016). Debtor's Information Technology experience is 20 years with specific and relevant SharePoint experience for greater than 10 years.

Additionally, Debtor will secure financing post-petition on his property (real and/or personal) and pay all classes of claims in full upon the close of escrow related to such financ-

ing. This finance option will not delay any scheduled plan payments that are due, it will only work to pre-pay payments that are due in the future.

Additionally, and alternatively to the secured financing in the previous paragraph, Debtor will sell his real property to pay off all classes of claims in full upon the close of escrow related to such sale. This sales option will not delay any scheduled plan payments that are due, it will only work to pre-pay payments that are due in the future.

6.2 Method of Plan Payments

a. Debtor shall commence yearly distributions to the Creditors on the first date of the twelfth full month after the Effective Date of the Plan, with the exception of the Class 1 secured claim, which shall continue monthly. Additionally, the priority IRS tax claim will also be paid in yearly installments commencing on the first date of the twelfth full month after the Effective Date of the Plan.

Additionally, a single payment shall be distributed at the close of escrow[3] to pay off each unsecured creditor if Debtor secures financing on his property (real or personal). All payments scheduled under this plan are due and payable and will be paid as required prior to the close of escrow for secured financing, if applicable.

Additionally, and alternatively a single payment shall be distributed at the close of escrow to pay off each unsecured creditor if Debtor sells his real property. All payments scheduled under this plan are due and payable and will be paid as required prior to the escrow close of Debtor selling his real property, if applicable.

b. Except as otherwise provided in the Plan, or upon the entry of a final, nonappealable order of the Bankruptcy Court, or as agreed to by the relevant parties, distributions under the Plan on account of a disputed claim that becomes an allowed claim after the effective date of the Plan shall be begin on the regular yearly payment date[4], as established by the Debtor, which is at least thirty (30) days after such claim becomes an allowed claim.

---

[3] Escrow would only be applicable to a real property transaction
[4] Or monthly payment date, if applicable

c. Notwithstanding anything in the Plan to the contrary, and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a disputed claim until all such disputes in connection with such disputed claim have been resolved by settlement among the parties or a final order of the Bankruptcy Court. In the event that there are disputed claims requiring adjudication and resolution, the Debtor shall establish appropriate reserves for potential payment of such Claims.

6.3 Disbursing agent. The disbursing agent who shall be appointed and authorized to make all disbursements and payments required by this Plan is the Debtor, Daniel Major Edstrom Sr. The disbursements hereunder shall be made by checks drawn on the accounts of the Debtor and signed by the debtor as disbursing agent, provided, however, that the disbursing agent shall not be liable for any action or failure to act hereunder in the absence of proof of bad faith or gross negligence.

To the extent Debtor enters into any escrow for secured financing or the sale of his real property, Debtor will provide the escrow agent with the information necessary to pay all plan claims in full as part of the escrow transaction.

6.4 Post-confirmation Management. The Debtor will manage his business operations and property post-petition in the ordinary course. Debtor will be authorized to enter into, terminate and renew lease agreements as he sees fit.

## ARTICLE VII – GENERAL PROVISIONS

7.1. Definitions and Rules of Construction. The definitions and rules of construction set forth in Sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

7.2. Effective Date of Plan. The effective date of this Plan is the fifteenth business day following the date of the entry of the confirmation order. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

7.3. Modification of Plan. Debtor retains the right to request modification of this Plan, at any time prior to its completion, so long as the Plan as so modified is prior to substantial consummation and otherwise complies with 11 U.S.C. § 1127.

7.4 Vesting of Property. Upon the Effective Date, all property of the estate and interests of the Debtor will vest in the reorganized Debtor pursuant to 11 U.S.C. § 1141(b) free and clear of all claims and interests except as provided in this Plan, subject to Debtor performing the provisions in this Plan.

7.5 Quarterly Fees to U.S. Trustee. A quarterly fee shall be paid by Debtor to the United States Trustee, for deposit into the United States Treasury, for each quarter (including any fraction thereof) until this case is converted, dismissed, or closed by the entry of a final decree, pursuant to 28 U.S.C. § 1930(a)(6). Debtor shall pay in full on the Effective Date of the Plan any amount owed by Debtor to the United States Trustee as of the Effective Date.

7.6 Post-confirmation Reports and Final Decree.

(a) Post-confirmation Reports. At the end of each calendar quarter after confirmation of this Plan, Debtor shall file with the Court a post-confirmation status report, the purpose of which is to explain the progress made toward full administration of the confirmed Plan of Reorganization. The first report shall be filed for the portion of the calendar quarter from the date of confirmation to the end of the quarter. Subsequent reports shall be filed at the expiration of each calendar quarter thereafter until dismissal, conversion, or entry of a final decree closing the case. Reports shall be filed with the Court and served upon the United States Trustee no later than twenty (20) days after the expiration of the reported quarter.

(b) The report shall include at a minimum: (1) A schedule listing for each debt and each class of claims: the total amount required to be paid under the plan; the amount required to be paid as of the date of the report; the amount actually paid as of the date of the report; and the deficiency, if any, in required payments; (2) A schedule of any and all postconfirmation tax liabilities that have accrued or come due and a detailed explanation of payments thereon; (3) Debtor's projections as to its continuing ability to comply with the terms of the plan; (4) An

estimate of the date for plan consummation and application for final decree; and (5) Any other pertinent information needed to explain the progress toward completion of the confirmed plan.

(c) Service of Reports: A copy of each report shall be served upon the United States Trustee and other persons or entities as have requested service of such reports in writing with the Court and served upon Debtor and his counsel, no later than the day upon which the report is filed with the Court.

(d) Final Decree: After the estate is fully administered, Debtor shall file an application for final decree, and shall serve the application on the United States Trustee, together with a proposed final decree. The United States Trustee shall have twenty (20) days within which to object or otherwise comment upon the Court's entry of the final decree.

7.7 The Reorganized Debtor. The Debtor is a self-employed individual who conducts his independent business activities through his Corporation, and moreover, Debtor recently earned revenue as a W-2 full time employee of Mastech, Inc. The reorganized Debtor may conduct and operate all his businesses without supervision or approval by the Bankruptcy Court. Debtor will be authorized to enter into, terminate and renew lease agreements and business engagement contracts as he sees fit. Such activities will include, but not necessarily be limited to, entering into lease contracts for Debtor's real property and/or contracts for improvement of real property, repairing real properties and maintaining a reserve account.

7.8 Release of Liens, Claims and Equity Interests. After the successful completion of the plan all unsecured liens, claims, mortgages, deeds of trust, or other security instruments against the property of the Debtor's estate shall be fully released and discharged. The security interests of the Debtor's lien holders (secured claimants), however, shall be unimpaired under the Plan with respect to both the Debtor and his property.

7.9 Objection(s) to Claims. Debtor shall review all Claims in this case and shall file any objections as are deemed appropriate in writing on or before sixty (60) days after the Effective Date of this Plan, or within 30 days of the filing of a valid and timely Proof of Claim, whichever is later.

7.10 Unclaimed Distributions. Whenever a distribution to a holder of an Allowed Claim remains unclaimed for ninety (90) days from issuance, the holder of the Allowed Claim theretofore entitled to such distribution shall cease to be entitled to such distribution and shall cease to be entitled to any further distribution(s).

7.11 Event of Default. In the event there is a default in the payment of any claim, or a material default in the performance by Debtor of his obligations under the Plan, and if the Debtor fails to cure the default within twenty (20) calendar days of the receipt of a written notice from such affected Claimant, the holders of such claims shall be free to exercise any and all remedies they may have under state and federal law, without necessity of further order of this Court. Alternatively, in the event there is a default under the terms of the Plan after the Effective Date, in accordance with Section 1112(b) of the Code, holders of claims shall be entitled to move for dismissal of the case. The provisions of this section shall not be construed to limit the remedies creditors and other parties-in-interest may have under state or federal law.

7.12 Retention of jurisdiction. The court shall retain jurisdiction to enforce and/or resolve disputes arising out of post-confirmation issues to the extent consistent with *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1194 (9th Cir. 2005) (adopting the *In re Resorts Int'l, Inc.*, 372 F.3d 154, 166-67 (3d Cir. 2004) test for post-confirmation "related to" jurisdiction).

7.13 Retention and Enforcement of Claims. Pursuant to Section 1123(b)(3) of the Code, the Debtor shall retain and hereby expressly reserves the right and discretion to prosecute or enforce any and all Claims, including, but not limited to, causes of action against third parties under applicable state or federal law, held by Debtor, whether such claims arose or accrued before or after the July 8, 2016 filing date.

7.14 Use of Bankruptcy Code Section 1129(b). The Debtor, as the proponent of this Chapter 11 Plan, hereby requests pursuant to Section 1129(b) of the Code, that this Court find that the provisions of this Plan provide fair and equitable treatment to and do not unfairly discriminate against those Claimants and interest holders who are impaired under the Plan and/or who otherwise elect not to accept the Plan, and that this Court confirm the Plan under the so-

called "cramdown" provisions of the Plan pursuant to Section 1129(b) of the Code notwithstanding the requirement of Section 1129(a)(8) of the Code as to such Claimants.

In the event Debtor shall make use of Bankruptcy Code Section 1129(b) for confirmation of his Plan, such confirmation shall be subject to and in conformity with the "absolute priority rule." The absolute priority rule prohibits a junior class of claims or interests from receiving or retaining any property or interest unless all classes of senior claims either receive full value of their claims or give their consent.

7.15 Term of Plan. This Plan shall continue in effect until all five (5) yearly installment payments to the Unsecured Creditors (Classes 2 through 9; see Sections 3.2 through 3.9) are paid in accordance with this Plan, or in accordance with any approved modification thereto.

7.16 Effectuating Documents; Further Transactions. The Debtor may take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.

7.17 Exemption from Certain Transfer Taxes. Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the confirmation order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

7.18 Revocation of Plan. The Debtor reserves the right to revoke or withdraw the Plan prior to the confirmation hearing and to file subsequent Chapter 11 plans. If the Debtor revokes or withdraws the Plan, or if confirmation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth

in a separate order entered by the Court; and (3) nothing contained in the Plan shall: (a) consti-
tute a waiver or release of any Claims by or against the Debtor or any other entity; (b) preju-
dice in any manner the rights of the Debtor or any other entity; or (c) constitute an admission,
acknowledgment, offer or undertaking of any sort by the Debtor or any other entity.

7.19 Successors and Assigns. The rights, benefits and obligations of any entity named
or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor,
administrator, successor or assign of such entity.

7.20 Reservation of Rights. Except as expressly set forth herein, the Plan shall have no
force or effect until the Court enters the confirmation order. Neither the filing of the Plan, any
statement or provision contained in the Disclosure Statement, nor the taking of any action by
the Debtor or any other entity with respect to the Plan shall be or shall be deemed to be an ad-
mission or waiver of any rights of: (1) the Debtor with respect to the holders of claims or other
entity; or (2) any holder of a Claim or other entity prior to the effective date of the Plan.

7.21 Further Assurances. The Debtor or the reorganized Debtor, as applicable, all hold-
ers of Claims receiving distributions under the Plan and all other entities shall, from time to
time, prepare, execute and deliver any agreements or documents and take any other actions as
may be necessary or advisable to effectuate the provisions and intent of the Plan or the confir-
mation order.

7.22 Severability. If, prior to confirmation of the Plan, any term or provision of the Plan
is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter
and interpret such term or provision to make it valid or enforceable to the maximum extent
practicable, consistent with the original purpose of the term or provision held to be invalid,
void or unenforceable, and such term or provision then will be applicable as altered or inter-
preted, provided that any such alteration or interpretation must be in form and substance rea-
sonably acceptable to the Debtor, and, to the extent such alteration or interpretation affects the
rights or treatment of holders of unsecured claims, such claim holder.

///

7.23 Return of Security Deposits. Debtor has no security deposits.

7.24 Filing of Additional Documents. On or before the Effective Date, the Debtor may file with the Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

7.25 Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

## ARTICLE VIII – DISCHARGE

8.1 Discharge. Confirmation of this Plan does not discharge[5] any debt provided for in this Plan as Debtor was discharged in a previous bankruptcy on December 23, 2014 (See Docket Item # 272 filed in case # 12-B-353-B-11 converted to 12-29353-B-7 on or around September 9, 2014 in the Eastern District of California, Sacramento Division of the United States Bankruptcy Court with original petition filing date of May 15, 2012). The Debtor will not receive a bankruptcy discharge from any debt as part of the above captioned bankruptcy and this Plan of Reorganization. This bankruptcy is simply a reorganization of Debtors current debts.

8.2 Once completed, this plan of reorganization shall be effective as to all Claims regardless of whether a proof of Claim was filed, whether the Claim is an Allowed Claim or whether the holder of the Claim votes to accept the Plan. The automatic stay of Section 362 of the Code shall remain in effect until the case is closed or dismissed.

DATED: July 8, 2016                    Respectfully Submitted,


By: _Daniel Major Edstrom Sr._____
Daniel Major Edstrom Sr.,
Debtor-in-Possession

---

[5] As defined previously in this document