

FILED

JUL - 8 2016

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

1

**DANIEL MAJOR EDSTROM SR.**
2690 Brown Bear Court
Cool, CA 95614
Ph.: (916) 207-6706
E-mail: dmedstrom@hotmail.com

Debtor-in-possession

## UNITED STATES BANKRUPTCY COURT

## IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

In re:

DANIEL MAJOR EDSTROM SR.,

Debtor in Possession

) CASE NO. 2016- 24451 -B-11
) DC No. DME-1
)
) Date: 8-30-2016
) Time: 2:30 pm
) Courtroom No.: 32
) Judge: Hon. Christopher D. Jaime
)
) United States Courthouse
) 501 I Street, 6th Floor
) Sacramento, CA 95814
)

## DISCLOSURE STATEMENT OF DANIEL MAJOR EDSTROM SR.
## DATED AND FILED JULY 8, 2016

# Table of Contents

I.   INTRODUCTION ........................................................................... 2

II.  DEFINITIONS ................................................................................ 4

III. BACKGROUND OF DEBTOR / HISTORY TO BANKRUPTCY FILING ................... 7

IV.  MAJOR EVENTS SUBSEQUENT TO THE FILING OF THIS BANKRUPTCY ........ 9

V. CREDITORS OF THIS BANKRUPTCY ESTATE ................................................. 9

VI. PROPERTY OF THIS BANKRUPTCY ESTATE ................................................ 13

VII. PENDING LITIGATION AND MATERIAL DISPUTES ..................................... 15

VIII. EXEMPTIONS ............................................................................... 15

IX. SUMMARY OF PLAN OF REORGANIZATION ........................................................... 16

X. LIQUIDATION SUMMARY ................................................................................. 18

XI. MEANS FOR IMPLEMENTATION OF DEBTOR'S PLAN/FEASIBILITY OF PLAN
............................................................................................................................ 23

XII. POST-CONFIRMATION MANAGEMENT ................................................................. 28

## I.    INTRODUCTION

This is the Disclosure Statement Dated and Filed July 8, 2016 (the "**Disclosure State-ment**") in the individual chapter 11 case of Daniel Major Edstrom Sr. (the "**Debtor**"). This Disclosure Statement contains information about the Debtor and describes the "Plan of Reorganization of Daniel Major Edstrom Sr. Dated and Filed July 8, 2016" (the "**Plan**") filed on July 8, 2016, in accordance with the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**"). A full copy of the Plan is attached to this Disclosure Statement as Exhibit 1. A copy of the ballot form by which holders of impaired claims may vote to accept or reject the Plan is attached to this Disclosure Statement as Exhibit 2.

YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THE PLAN AND THIS DISCLOSURE STATEMENT CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.

**PURPOSE OF THIS DOCUMENT**:

DANIEL MAJOR EDSTROM SR., Debtor-in-possession, provides this Disclosure Statement in support of Debtor's plan of reorganization under Chapter 11, U.S. Code, pursuant to 11 U.S.C. § 1125 to provide persons and entities entitled to vote to accept or reject Debtor's Plan with information in assistance of evaluation of the merits of the Plan. A copy of the Plan is attached to this Disclosure Statement as Exhibit 1. Before the Debtor or any other person, committee, or creditor can solicit your acceptance or rejection of this Plan, the Court must review and approve this Disclosure Statement, after notice and a hearing, as containing adequate information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the

1  nature and history of the Debtor and the condition of the Debtor's books and records, that

2  would enable a hypothetical reasonable investor typical of holders of claims or interests of the

3  relevant class to make an informed judgment about this Plan, as provided by 11 U.S.C. §

4  1125(a)(1). Should the Court approve this Disclosure Statement, a copy of the Court's Order

5  will be provided to you, along with a ballot and other information to permit you to vote to ac-

6  cept or reject this Plan. At that time, you will be directed to complete and forward your ballots

7  to Daniel Major Edstrom Sr., the Debtor, at 2690 Brown Bear Court, Cool, CA 95614.

8       This Disclosure Statement describes:

9       • The Debtor and the significant events during the bankruptcy case;

10      • How the Plan proposes to treat claims of the type you hold (i.e., what you will receive

11  for your claim if the plan is confirmed);

12      • Who can vote on or object to the Plan;

13      • What factors the Bankruptcy Court (the "Court") will consider when deciding wheth-

14  er to confirm the Plan;

15      • Why the Debtor believes the Plan is feasible, and how the treatment of your claim un-

16  der the Plan compares to what you would receive on your claim in a liquidation under Chapter

17  7; and

18      • The effect of confirmation of the Plan.

19      As stated above, the Court has not yet confirmed the Plan described in this Disclosure

20  Statement. Only if and when Debtor's Disclosure Statement is approved by the Court will the

21  Court hear the issue of whether or not to confirm Debtor's proposed Plan. If the Court does ap-

22  prove Debtor's Disclosure Statement, very shortly after the time of this approval, Debtors,

23  through their counsel, will provide to you an Order Approving Disclosure Statement, a copy of

24  Debtor's Plan, and a ballot which impaired claim-holders may use to vote to accept or reject

25  Debtor's Plan. The Order Approving Disclosure Statement will include dates, fixed by the

26  Court, which will include the date on or before which all ballots to accept or reject Debtor's

27  Plan are to be submitted to Debtor's counsel, the date on or before which all objections to con-

28

1  firmation of Debtor's Plan are to be filed with the Court and served on Debtor's counsel, and

2  the date and time of the Court's hearing on the confirmation of Debtor's Plan.

3  Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement

4  describes the Plan, but it is the Plan itself, if and when confirmed, that will establish and con-

5  trol your rights. Please be advised that if the Plan is confirmed, the Plan will be controlling and

6  determine your rights, even if you did not vote to accept the Plan, and thus it is important you

7  review the Plan as well as this Disclosure Statement thoroughly.

8  **IDENTITY OF PERSON TO CONTACT FOR MORE INFORMATION:**

9  **If you require additional information about the Plan or this Disclosure Statement,**

10  **you should contact Debtor Daniel Major Edstrom Sr., 2690 Brown Bear Court, Cool, CA**

11  **95614, (916) 207-6706, dmedstrom@hotmail.com.**

12  **II. DEFINITIONS**

13  "**Allowed Claim**" shall mean a Claim (a) in respect of which a proof of claim has been

14  filed with the court within the applicable period of limitation fixed by Bankruptcy Rule 3001;

15  or (b) scheduled in the List of Creditors or Schedules prepared and filed with the court pursu-

16  ant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent or un-liquidated as to

17  amount, in either case as to which no objection to the allowance thereof has been interposed

18  within any applicable period of limitation fixed by Rule 3001 or an order of the court, or as to

19  which any such objection has been determined by an order or judgment which is no longer sub-

20  ject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is

21  pending.

22  "**Allowed Interest**" shall mean an Interest (a) in respect of which a proof of interest has

23  been filed with the court within the applicable period of limitation fixed by Rule 3001; or (b)

24  scheduled in the list of equity security holders prepared and filed with the court pursuant to

25  Rule 1007(b), in either case as to which no objection to the allowance thereof has been inter-

26  posed within any applicable period of limitation fixed by Rule 3001 or an order of the court, or

27  as to which any such objection has been determined by an order or judgment which is no long-

28

er subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

"**Allowed Secured Claim**" shall mean an Allowed Claim secured by a lien, security interest or other charge against or interest in property in which Debtor has an interest, or which is subject to setoff under Section 553 of the Code to the extent of the value (determined in accordance with Section 506(a) of the Code) of the interest of the holder of such Allowed Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

"**Claim**" shall mean any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment against Debtor in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, un-liquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, beneficial, secured or unsecured.

"**Class**" shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article III hereof.

"**Code**" shall mean the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. and any amendments thereof.

"**Confirmation Date**" shall mean the date upon which the Order of Confirmation is entered by the court.

"**Court**" shall mean the United States Bankruptcy Court for the Eastern District of California, in which the Debtor's Chapter 11 case, pursuant to which the Plan is proposed, is pending, and any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

"**Creditor**" shall mean any person or entity that has a claim against the debtor.

"**Debtor**" or "**Debtors**" shall mean Daniel Major Edstrom, Sr.

"**Effective Date**" shall mean the fifteenth business day following the date of the entry of the confirmation order. But if a stay of the confirmation order is in effect on that date, the

effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

"**Indebtedness**" as applied to the Debtor shall mean:

(a) all indebtedness or other obligations of the Debtor for borrowed money for the deferred purchase price of property or services.

(b) all indebtedness of the Debtor, contingent, direct or otherwise, secured (or for which the holder of such indebtedness has an existing right contingent or otherwise to be secured) by any mortgage, pledge, lien, security interest or vender's interest under any conditional sale or other title retention agreement existing on any property or asset owned or held by the Debtor, whether or not the indebtedness secured thereby shall have been assumed by the Debtor (hereinafter "Secured Indebtedness"); or

(c) all indebtedness of others, secured or unsecured, directly or indirectly guaranteed, endorsed, or discounted with recourse by the Debtor, or in respect of which the Debtor is otherwise directly or indirectly liable, including without limitation, indebtedness in effect guaranteed by the Debtor through any agreement (contingent or otherwise) to purchase, repurchase or otherwise acquire such indebtedness or any security therefore, or to provide funds for the payment or discharge of such indebtedness or of any other liability of the obligor of such indebtedness (whether in the form of loans, advances, stock purchases, capital contributions or otherwise), or to maintain the solvency or any balance sheet or other financial condition of the obligor of such indebtedness, or to make payment for any products, materials or supplies or for any transportation or services regardless of the non-delivery or non-furnishing thereof.

"**Net Income**" shall have the same definition as is used on Schedule J of the Official Bankruptcy Forms, specifically line 20.c.

"**Order of Confirmation**" shall mean the order entered by the court confirming the Plan in accordance with the provisions of Chapter 11 of the Code which order is no longer subject to appeal or certiorari proceeding or as to which no appeal or certiorari proceeding is pending.

1       "**Person**" shall mean an individual, corporation, partnership, joint venture, trust, estate,

2 unincorporated organization, or a government or any agency or political subdivision thereof.

3       "**Petition Date**" shall mean July 8, 2016 the date on which Debtor filed his Chapter 11

4 petition with the court.

5       "**Plan**" shall mean this Chapter 11 Plan dated July 8, 2016.

6       "**Rules**" shall mean the Bankruptcy Rules, as amended and supplemented by the Inter-

7 im Bankruptcy Rules (and local bankruptcy rules) as adopted by the court.

8       "**Secured Creditor**" shall mean any creditor who holds a claim against the Debtor se-

9 cured by a lien, security interest or other encumbrance which has been properly attached and

10 perfected as required by law with respect to property of the estate, or who holds a claim that is

11 subject to setoff under Section 553 of the Code to the extent of the value of such creditor's in-

12 terest in the estate's interest in such property, or to the extent of the amount subject to setoff, as

13 the case may be.

14       <u>Undefined Terms and Section Numbers</u>. A term used, but not defined, in this Plan, but

15 defined in the Code has the meaning given to that term in the code, unless the context clearly

16 indicates or requires otherwise. References in this Plan Including Disclosure Statement Infor-

17 mation to a code section are references to the Code, except as otherwise indicated.

18       **III. BACKGROUND OF DEBTOR / HISTORY TO BANKRUPTCY FILING**

19       Daniel Major Edstrom Sr., Debtor-in-Possession, is a self-employed individual who

20 conducts his independent business activities through his Corporation. The Debtor currently has

21 no employees. At present, in addition to this, Debtor just ended a 22-month contract with Mas-

22 tech as a W-2 contract employee. Mastech placed Debtor on a contract at Kaiser Permanente as

23 Operations Lead for one of the largest SharePoint deployments in the world. Debtor uses his

24 substantial experience in Information Technology (20+ years) and his substantial experience in

25 SharePoint and SQL Server technologies as the Operations Lead for Kaiser where he interfaced

26 between IBM personnel, who manage the physical infrastructure, and Kaiser personnel, who

27 manage the applications and services. The nature of Debtor's personal employment and busi-

28

nesses is in information technology. Additionally, Debtors business consists of litigation support, legal project management and Securitization Reverse Engineering and Failure Analysis.

Debtor commenced this bankruptcy case on July 8, 2016, when, under substantial, immediate, and urgent pressure from the ending of his W-2 employment contract, the continuing fraudulent foreclosure, and compounded by late bills, he filed his petition. Debtor's problems began with and flowed from the severe downturn in the real estate market and general economic environment in general. Debtor is a software, network and web architect who recently, because of the mortgage meltdown moved into the emerging market of researching complex Wall Street financial engineering transactions as well as litigation support and legal project management for attorneys helping homeowners with fabricated documents and fraudulent foreclosure related issues. At the worst of the real estate downturn Debtor's jobs, and prospects for the same, had reached very low levels. While the market appears to be in recovery, the market is still oscillating quite a bit. It is as a consequence of this that Debtor was unable to continue to meet his financial obligations, and bankruptcy protection and reorganization became necessary.

Debtor's real property is essential to the estate as Debtor relies on this property for his residence as well as running his business from this property. Debtor has dedicated a portion of his residence dedicated to business use and has office equipment including computers, printers, desks, a library of reference books, and many other types of equipment and supplies accumulated over the last 19 years of business operations. If Debtor were to lose possession of the property it would be necessary for further additional expenses for operating the business elsewhere, the disruption of moving office equipment and finally the disruption of moving communications services including telephone and Internet providers. The value of Debtors property is not known at this time, Debtor will provide a valuation prior to the hearing to approve Debtors disclosure statement. There are multiple false competing claims which are clouds on title (rendering title to this property unmarketable).

///

///

**IV. MAJOR EVENTS SUBSEQUENT TO THE FILING OF THIS BANKRUPTCY**

Debtor filed this Disclosure Statement with the filing of the petition so this section is not applicable.  When/if Debtor amends this disclosure statement this section will be updated.

**V. CREDITORS OF THIS BANKRUPTCY ESTATE**

On July 8, 2016, Debtor filed Schedules identifying the nature and amount of what he understood to be his prepetition obligations. Since the time of filing the petition, Debtor has incurred no further obligations.

The creditors and interest-holders of this estate, together with their status and the amount of their claims as reflected in any proofs of claim are shown below. Debtor filed his Plan on the same date as the petition and the Claims Registry was empty. Debtor will regularly review the Claims Registry and amend the Plan and Disclosure Statement accordingly and/or will file an objection to proof of claim as necessary. In all applicable instances in which a creditor files a claim, the claim amount given on the filed claim will be used to amend the Plan and Disclosure Statement if applicable; in all other cases the amount scheduled by the Debtor is used. The statements in these lists are made without admission, however, that the Debtor agrees or has stipulated to the amount or nature of such claim, or that no objection will be made by this estate.

SECURED CLAIM OF STATE FARM INSURANCE (CLASS 1-Not Impaired under Plan)

| Name of Creditor | Amount of Claim | Type Collateral/Priority |
|---|---|---|
| State Farm Insurance Company | $ 22,496.65 | Whole Life Insurance Policy |

(1) Amount allowed.................................................................................. $ 22,496.65

(2) Amount of unscheduled secured claims (this total includes (a) secured claims filed by unscheduled creditors, and (b) the portion of any secured claim filed by a scheduled creditor that exceeds the amount scheduled by the Debtor) ........................................................ $ 0.00

(3) Total claims scheduled or filed .............................................................. $ 22,496.65

(4) Total amount ruled unsecured under Section 506(a) ...................................... $ 0.00

(5) Estimated allowable secured claims ....................................................... $ 22,496.65

SECURED CLAIM OF AUBURN LAKE TRAILS POA (CLASS 2-Not Impaired under Plan)

| Name of Creditor | Amount of Claim | Type Collateral/Priority |
|---|---|---|
| Auburn Lake Trails POA | $ 865.12 | Credit Card Purchases |

(1) Amount allowed........................................................................................... $ 865.12

(2) Amount of unscheduled secured claims (this total includes (a) secured claims filed by unscheduled creditors, and (b) the portion of any secured claim filed by a scheduled creditor that exceeds the amount scheduled by the Debtor) .......................................................... $ 0.00

(3) Total claims scheduled or filed .................................................... $ 865.12

(4) Total amount ruled unsecured under Section 506(a) ........................................ $ 0.00

(5) Estimated allowable secured claims ............................................................ $ 865.12

SECURED CLAIM OF CAPITAL ONE (CLASS 3 – Not Impaired under Plan)

| Name of Creditor | Amount of Claim | Type Collateral/Priority |
|---|---|---|
| Capital One | $ 956.44 | Credit Card Purchases |

(1) Amount allowed........................................................................................... $ 956.44

(2) Amount of unscheduled secured claims (this total includes (a) secured claims filed by unscheduled creditors, and (b) the portion of any secured claim filed by a scheduled creditor that exceeds the amount scheduled by the Debtor) .......................................................... $ 0.00

(3) Total claims scheduled or filed .................................................... $ 956.44

(4) Total amount ruled unsecured under Section 506(a) ........................................ $ 0.00

(5) Estimated allowable secured claims ............................................................ $ 956.44

SECURED CLAIM OF CREDIT ONE (CLASS 4-Not Impaired under Plan)

| Name of Creditor | Amount of Claim | Type Collateral/Priority |
|---|---|---|
| Credit One | $ 456.54 | Credit Card Purchases |

(1) Amount allowed........................................................................................... $ 456.54

(2) Amount of unscheduled secured claims (this total includes (a) secured claims filed by unscheduled creditors, and (b) the portion of any secured claim filed by a scheduled creditor that exceeds the amount scheduled by the Debtor) .......................................................... $ 0.00

(3) Total claims scheduled or filed ............................................................. $ 456.54

(4) Total amount ruled unsecured under Section 506(a) ........................................ $ 0.00

(5) Estimated allowable secured claims ............................................................. $ 456.54

SECURED CLAIM OF MERRICK BANK (CLASS 5-Not Impaired under Plan)

| Name of Creditor | Amount of Claim | Type Collateral/Priority |
|---|---|---|
| Merrick Bank | $ 1,395.04 | Credit Card Purchases |

(1) Amount allowed........................................................................................ $ 1,395.04

(2) Amount of unscheduled secured claims (this total includes (a) secured claims filed by unscheduled creditors, and (b) the portion of any secured claim filed by a scheduled creditor that exceeds the amount scheduled by the Debtor) ........................................................... $ 0.00

(3) Total claims scheduled or filed ................................................................. $ 1,395.04

(4) Total amount ruled unsecured under Section 506(a) ........................................ $ 0.00

(5) Estimated allowable secured claims ........................................................... $ 1,395.04

SECURED CLAIM OF MYRON CORPORATION (CLASS 6-Not Impaired under Plan)

| Name of Creditor | Amount of Claim | Type Collateral/Priority |
|---|---|---|
| Myron Corporation | $ 55.79 | Personal Guaranty |

(1) Amount allowed........................................................................................ $ 55.79

(2) Amount of unscheduled secured claims (this total includes (a) secured claims filed by unscheduled creditors, and (b) the portion of any secured claim filed by a scheduled creditor that exceeds the amount scheduled by the Debtor) ........................................................... $ 0.00

(3) Total claims scheduled or filed ..................................................................... $ 55.79

(4) Total amount ruled unsecured under Section 506(a) ........................................ $ 0.00

(5) Estimated allowable secured claims ............................................................. $ 55.79

SECURED CLAIM OF JAN VAN ECK (CLASS 7-Not Impaired under Plan)

| Name of Creditor | Amount of Claim | Type Collateral/Priority |
|---|---|---|
| Jan van Eck | $ 1,200.00 | Personal Guaranty |

(1) Amount allowed........................................................................................ $ 1,200.00

(2) Amount of unscheduled secured claims (this total includes (a) secured claims filed by unscheduled creditors, and (b) the portion of any secured claim filed by a scheduled creditor that exceeds the amount scheduled by the Debtor) ........................................................... $ 0.00

(3) Total claims scheduled or filed ................................................................ $ 1,200.00

(4) Total amount ruled unsecured under Section 506(a) ....................................... $ 0.00

(5) Estimated allowable secured claims ......................................................... $ 1,200.00

SECURED CLAIM OF KEVIN SAITTA (CLASS 8-Not Impaired under Plan)

| Name of Creditor | Amount of Claim | Type Collateral/Priority |
|---|---|---|
| Kevin Saitta | $ 2,000.00 | Personal Guaranty |

(1) Amount allowed.................................................................................... $ 2,000.00

(2) Amount of unscheduled secured claims (this total includes (a) secured claims filed by unscheduled creditors, and (b) the portion of any secured claim filed by a scheduled creditor that exceeds the amount scheduled by the Debtor) ........................................................... $ 0.00

(3) Total claims scheduled or filed ................................................................ $ 2,000.00

(4) Total amount ruled unsecured under Section 506(a) ....................................... $ 0.00

(5) Estimated allowable secured claims ......................................................... $ 2,000.00

GENERAL UNSECURED CLAIMS (CLASS 9-Not Impaired under Plan)

| Name of Creditor | Amount of Claim | Type of Priority |
|---|---|---|
| Comenity Bank | $ 700.00 | Credit Card Purchase-fraud |

(1) Amount scheduled (total includes disputed and undisputed claims)............ $ 700.00

(2) Amount of unscheduled unsecured claims (this total includes (a) claims filed by un-scheduled creditors, and (b) the portion of any claim filed by a scheduled creditor that exceeds the unsecured amount scheduled by the Debtor) ........................................................... $ 0.00

(3) Total claims scheduled or filed ................................................................ $ 700.00

(4) Total amount disputed by Debtor ............................................................. $ 700.00

(5) Estimated allowable unsecured claims ........................................................ $ 0.00

///

DEBTOR'S EQUITY INTEREST IN ESTATE (CLASS 10 – Not Impaired under Plan)

This Class 10 claim is Debtor's interest in the property of this bankruptcy estate, all of which property shall entirely vest in Debtor upon confirmation of this Plan.

UNCLASSIFIED CLAIMS

| Name of Creditor | Amount of Claim | Type of Priority |
|---|---|---|
| Internal Revenue Service | $ 992.42 | 11 USC § 507(a)(8) |

(1) Amount scheduled (this total includes disputed and undisputed claims) .... $ 992.42

(2) Amount of unscheduled priority claims (this total includes (a) priority claims filed by unscheduled creditors, and (b) the portion of any priority claim filed by a scheduled creditor that exceeds the amount scheduled by the Debtor) .......................................................... $ 0.00

(3) Total claims scheduled or filed ................................................................. $ 992.42

(4) Total amount disputed by Debtor.................................................................. $ 0.00

(5) Estimated allowable priority claims ........................................................... $ 992.42

POST-PETITION CLAIMS

This section will be amended to include any applicable post-petition claims that arise, currently there are none.

Debtor shall pay these claims in their full amounts within 30 days of the Effective Date or otherwise amend this plan to include the appropriate payment plan for these priority claims, if any.

## VI. PROPERTY OF THIS BANKRUPTCY ESTATE

The Debtor's assets at the time of the commencement of the case, as summarized on Schedules A and B, are herein set forth within the following table:

| No. | Asset | Estimated Value | Basis for Estimated Value | $ not exempt |
|---|---|---|---|---|
| 1 | Cash (DIP accounts) | $........  2,945.05 | Cash not exempt (and not cash col-lateral) | $....  2,945.05 |
| 2 | Retirement/IRA | $........  495.70 | Account Balance | $....  0.00 |
| 3 | Automobiles/Trailer | $........  3,100.00 | Debtor's BPOs using KBB | $....  50.00 |
| 4 | Trust Account | $........  18,000.00 | Trust Funds [Debtor's estimate of none remaining available] | $....  0.00 |
| 5 | 50% ownership of corporation | $........  10,000.00 | Debtor's BPO | $.... 10,000.00 |
| 6 | Life Insurance Cash Value | $........  23,305.95 | State Farm valuation; $22,496.65 secured lien; | $....  0.00 |

13
Disclosure Statement
In re Daniel Major Edstrom Sr.; Case No. 2016-

| | 7 | Other personal prop-<br>erty | $........ 13,120.00 | [all exempted on Schedule C, or<br>encumbered] | $.... 0.00 |
|---|---|---|---|---|---|
| | 8 | Real Property; 2690<br>Brown Bear Court | $...... Unknown | Debtor will value this property prior<br>to Plan Confirmation hearing [title<br>clouded by numerous competing<br>claims; obligation discharged as<br>unsecured in previous bankruptcy] | $............ 0.00 |
| | | **TOTALS** | **$ 70,966.70** | | **$ 12,995.05** |

Item (1) is $2,911.05 cash in Debtor's account (prepetition) which will be closed and moved into a general use DIP account. $34.00 cash in Debtors possession. None of the cash is exempted on Schedule C.

Item (2) is composed of two IRA accounts held at Schwab and TDAmeritrade which are set forth on Schedule B and fully exempted on Schedule C.

Item (3) is three automobiles and one trailer; a 1991 Toyota Camry valued at $600.00; a 2000 Ford Mustang GT valued at $1,000.00; a 1999 Ford Explorer valued at $1,500.00; and a 4'x8' utility trailer valued at $250.00. These items are exempted to $3,050.00 as set forth in Schedule C. There is also a Cadillac Escalade owned by Debtors non-filing spouse (Debtor is not on title) kept at Debtors residence.

Item (4) is a trust account with Debtors previous lawyer (Bottomline Lawyers) alleged-ly holding $18,000.00 of Debtors money (in trust). Creditor Bottomline Lawyers (discharged in Debtors previous Chp. 7 bankruptcy) alleges the full amount of this $18,000.00 is earned. To the extent the creditor is still holding any portion of this $18,000.00 on behalf of the estate, it is only potentially recoverable through a bar complaint, contested hearing, Adversary Proceeding and/or other type of litigation. None of this amount is exempted on Schedule C.

Item (5) is Debtors 50% ownership in DTC Systems, Inc. an S Corporation. Debtor did not schedule any exemption for this property on Schedule C.

Item (6) is Debtors Life Insurance Policy cash value. This policy is security for a life insurance loan as listed on Schedule D. The balance left is listed as exempt on Schedule C.

Item (7) is miscellaneous personal property, of a wholly household or personal nature. Debtor estimates the actual private party sale values to be $100.00 for the jewelry, $1,000.00 for the clothing, $750.00 for the collectibles, $1,700.00 for the sports and hobby equipment,

and $8,920.00 for the household goods & furnishings, $50.00 for animals (2 dogs and 4 cats), and $600.00 for firearms and firearm accessories. All of this property is listed as exempt on Schedule C.

Item (8) is the one (1) real property owned in title by Debtor and his non-filing spouse. The full Property address is 2690 Brown Bear Court, Cool, CA 95614. Debtor does not have enough information to value this property in the current market. Debtor will value this property prior to (or contemporaneously with) the hearing to approve Debtors disclosure statement. There are multiple false competing claims which are clouds on title (rendering title to this property unmarketable). In 2012 (prior to filing the petition) debtor and debtors non-filing spouse recorded a homestead in the Official Records of the County of El Dorado Recorders Office. This declared homestead is listed on Schedule C.

### VII. PENDING LITIGATION AND MATERIAL DISPUTES

Debtor is not a party to any pending litigation.

Debtors real property is clouded by multiple competing claims, all of which have been previously disputed and the corresponding debts discharged. No valid pre-petition secured claims were perfected prior to Debtors previous bankruptcy (filed May 15, 2012) and no valid pre-petition secured claims exist prior to the petition in this bankruptcy (filed July 8, 2016). All claims have been abandoned in Debtors previous bankruptcy, where the claims were listed as unsecured and disputed. A creditor filed a secured Proof of Claim in the previous bankruptcy, even though there was no perfected lien listed in the claim, and then abandoned the form and substance of their claim after Debtor filed a claim objection. Debtor will seek to remove these clouds through an adversary proceeding once Debtors plan is confirmed, or earlier if any of the purported creditors seeks to breathe life into one of these false claims by filing another false proof of claim.

### VIII. EXEMPTIONS

Debtor has claimed and scheduled the property of this estate exempt, except where not set forth as exempt on Schedule C and furthermore reported as not exempted herein under Ro-

man Numeral VI above. Most personal property is exempted, as is set forth in the table under the heading of Roman Numeral VI above. Debtor's cash is not exempt, nor his is interest in DTC Systems and nor is any of the attorney trust funds allegedly held by BottomLine Lawyers. Finally Debtors cars and trailer are only exempted to $3,050.00, leaving $300.00 as not exempt. Debtor does not have legal title to the Cadillac Escalade owned by his non-filing spouse, so no related exemption has been given. All other property of this estate is exempted. Debtor holds a recorded homestead on his real property together with his non-filing spouse. This declared homestead was executed May 9, 2012 and recorded on May 10, 2012 as Document 2012-0022565-00 in the Official Records of the El Dorado County Recorder's Office. Debtor and his family, including his non-filing spouse have resided in the property as their principal residence at all times since the homestead was executed and recorded. Debtors real property value is unknown and therefore the extent of the exemptions on his real property are unknown.

Going further, Debtor claims that all property of the estate is exempt by operation of law, specifically under 11 U.S.C. § 1129, because there are no holders of any impaired claims or interests, and all creditors will receive or retain under the plan 100% of their pre-petition claims plus interest.

There is no pending litigation over the nature or amount, or of the exempt/nonexempt status of any property of this estate.

## IX. SUMMARY OF PLAN OF REORGANIZATION

Under the Debtor's Plan, Daniel Major Edstrom Sr. will continue at his business going forward.

This Chapter 11 reorganization contains a total of all claims of approximately $29,425.58, with one (1) secured claim, eight (8) unsecured claims and one (1) general unsecured claim, which is listed as disputed. The Plan provides for full payment of the allowed amount of all claims. The unimpaired secured claim (Class 1, to State Farm Insurance, secured by Debtors Whole Life Insurance Policy) is to be paid monthly as agreed in the original pre-petition agreements. The unimpaired unsecured Class 2, Class 3, Class 4, Class 5, Class 6,

1  Class 7 and Class 8 claims, are to be paid in full by making yearly payments over five (5)

2  years. There are currently no undisputed and allowed general unsecured claims in Class 9[1], but

3  if this plan is modified to include any general unsecured claims from Proof of Claims that are

4  filed, they will be paid in full over 5 years with 1 payment per year. Finally, the plan provides a

5  class (class 10) for Debtor's interest in the property of this bankruptcy estate, which entirely

6  revests in the Debtor upon confirmation, and thus this class is unimpaired. There are no im-

7  paired classes of claims in this plan.

8      The Debtor's Plan provides that all prepetition tax debt shall be paid prior to July 1,

9  2021, and this includes all claims held by a taxing authority and of the type and priority pro-

10  vided for under Section 507(a)(8) of the Code, and described under Section 1129(a)(9)(C) of

11  the Code. Thus, the Debtor's Plan provides payment of the full allowed amount of each unclas-

12  sified tax claim over a period that will be completed less than 5 years after the order for relief

13  under Section 301 of the Code, and in a manner not less favorable than the most favored

14  nonpriority unsecured claim provided for by the Plan, and thus in a manner fully compliant

15  with Section 1129(a)(9) of the Code. The plan provides that any other administrative claims

16  shall be paid in full, upon Court review and Court Order. The Debtor's Plan classifies claims

17  into various classes and provides for payment or treatment of each class in installments paid

18  over time (or, for Section 507(a)(2) administrative claims, if any, upon Court Order). Although

19  the Debtor's Plan is summarized below, Creditors should review the Plan to determine the spe-

20  cific classification and treatment of their claim(s).

21      The summary follows.

22      a. Unimpaired Class

23      Class 1 (Secured Claim) (¶ 3.1)

24      Class 2 (Unsecured Claim) (¶ 3.2)

25      Class 3 (Unsecured Claim) (¶ 3.3)

26      Class 4 (Unsecured Claim) (¶ 3.4)

27

28  [1] There is one disputed claim in Class 9 that Debtor expects will not be an allowed claim

1    Class 5 (Unsecured Claim) (¶ 3.5)

2    Class 6 (Unsecured Claim) (¶ 3.6)

3    Class 7 (Unsecured Claim) (¶ 3.7)

4    Class 8 (Unsecured Claim) (¶ 3.8)

5    Class 9 (Unsecured Claim) (¶ 3.9)

6    Class 10 (Debtor's Interest in Property of This Bankruptcy Estate) (¶ 3.10)

7    A class of claims or interests is unimpaired if in general, the Debtor's Plan leaves unal-

8    tered the legal, equitable, and contractual rights to which the claim or interest entitles the hold-

9    er of such claim or interest, except that the Debtor's Plan may, under certain circumstances,

10    prohibit the exercise of any right to pursue co-Debtor or accelerate the payments due on ac-

11    count of any Claim.

12    b. Impaired Classes

13    The following classes are impaired under the Debtor's Plan. The paragraph number set

14    forth next to the class indicates the paragraph of the Debtor's Plan that sets forth the specific

15    treatment of the class.

16    *There are no impaired classes of claims in Debtors plan.*

17    Each holder of a claim or claims in impaired classes should refer to the Debtor's Plan,

18    and in particular, to the pertinent paragraph(s) of the Debtor's Plan set forth above, to deter-

19    mine the exact treatment of such claim under the Debtor's Plan.

20    **X. LIQUIDATION SUMMARY**

21    In the event that the Debtor's Plan, as it may be amended from time to time, is not ac-

22    cepted by the requisite vote, or is not confirmed by Order of this court, and no further amend-

23    ments are possible or are permitted by court order, one alternative normally available would be

24    to convert this matter to a liquidation proceeding under Chapter 7 of the Bankruptcy Code.

25    However, Debtor has already been liquidated in a Chapter 7 and received a bankruptcy dis-

26    charge in December 23, 2014. Additionally, Debtors plan is to pay his creditors 100% of their

27    claims. Thus there is no possibility of a liquidation or the need for a liquidation analysis.

28

Debtors plan to pay creditors 100% of their claims is certainly more than what creditors would receive under a hypothetical liquidation as shown by a cursory review of Debtors exemptions. Even though the non-exempt property is very close to the amount of claims, and possibly exceeds them, most of this non-exempt property can only be recovered through litigation (if at all) or through liquidation of Debtors half of DTC Systems, Inc. or through a partial exemption of Debtors vehicles.

Nevertheless, Debtor includes the following hypothetical liquidation summary as if the Debtor could be liquidated in a Chapter 7.

In the event Debtors bankruptcy is converted to a Chapter 7, a trustee would be appointed with authority to liquidate all nonexempt property of this estate, to the extent of any existing equity. The trustee's fee, the fees of any professional persons employed to assist the trustee, and any costs of liquidation, including storage, maintenance, preparation, and sale would be deducted from the proceeds of such liquidation. All creditors holding perfected, unavoidable liens would be entitled to receive either their collateral or the value of such property. All priority claims would be entitled to receive payment from the remaining balance of any proceeds, and if any monies remained, a distribution would then be made to unsecured creditors.

SUMMARY OF LIQUIDATION ANALYSIS:

Section 1129(a)(7) of the Bankruptcy Code provides that each holder of an impaired claim or interest (i) has accepted the Plan of Reorganization ("Plan"); or (ii) will receive or retain under the Plan, on account of such claim or interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date.

This Liquidation Analysis indicates the values that may be obtained by Classes of Claims and Interests upon the disposition of assets pursuant to a Chapter 7 liquidation, as an alternative to continued operation of the business and payments under the Plan. Accordingly,

collateral (property of the estate) values discussed herein may be different from amounts re-ferred to in the Plan.

The Liquidation Analysis is based upon estimates and assumptions, which although ra-tionally based and considered reasonable by Debtor, are inherently subject to significant eco-nomic and competitive uncertainties and contingencies beyond the control of the Debtor.

Accordingly, there can be no assurances that the values reflected in this Liquidation Analysis would be realized if the Debtor were, in fact, to undergo such a liquidation. In addi-tion to the assumptions that are set forth herein, there are significant areas of uncertainty that exist with respect to the liquidation process and hence this Liquidation Analysis, with the as-sumption regarding the liquidation process as follows:

(1) The Liquidation Analysis assumes that the liquidation of the Debtor's estate would commence on or about September 1, 2016 and be substantially completed within a 90-day pe-riod. Upon such a liquidation, the Debtor assumes, with a high degree certainty, that Debtor business interest (50% ownership of DTC Systems) of all Debtor's current and ongoing areas of business would want to immediately terminate their agreements and seek similar ser-vices/consulting elsewhere, and moreover, the Debtor would need to halt their business opera-tions in order to liquidate, which would require the Debtor wind-up his business affairs. Thus the Debtor would halt his services, although certainly in a cooperative fashion with his current principals, and do so in a relatively short amount of time, most likely within approximately 30 days.

(2) During the 90-day period, all management operations of DTC Systems would be wound down or transferred to others. No substantive phase-out of employment positions would be required, because all or most business operations are being performed by the Debtor (or Debtors non-filing spouse, who owns the remaining 50% of the business). The Debtor would remain involved and engaged as necessary to support the completion of an orderly liquidation.

(3) After wind-up of operations, the assets of the estate would be liquidated in an order-ly fashion. An orderly liquidation of all assets would include activities such as the sale of vari-

ous assets to a purchaser of such assets, and the completion of the claims reconciliation process.

(4) The wind down costs during the 90-day period have been estimated by the Debtor, with the only two substantial costs foreseen to be (i) the cost of the sale of Debtors 50% interest in DTC Systems in which equity exists to be realized, and (ii) the Chapter 7 Trustee fee. While each of these are set and unavoidable, each may be estimated to a relatively high degree of accuracy and neither is in any direct way dependent upon time, and thus no substantial deviation from the following estimate that would flow consequentially from a deviation from the 90-days time requirement estimate is foreseeable.

(5) In any liquidation there is a general risk of unanticipated events that could have a significant impact on the projected cash receipts and disbursements. These events include unforeseen near-term changes in general economic conditions and changes in the market value of the Debtor's assets.

(6) Although entirely unanticipated by the Debtor as being pertinent, the issues potential recoveries from avoidance actions and final bankruptcy claims reconciliation have not been addressed in the Liquidation Analysis.

RECOVERIES UNDER THE PLAN VERSUS RECOVERIES IN A LIQUIDATION:

The following table sets forth an estimated distribution of $ 6,800.55 in net proceeds from the Debtor in a hypothetical Chapter 7 liquidation of the Debtors, commencing September 1, 2016. The estimated value of the assets were obtained as described in the Notes that follow the table. Values may vary significantly due to a variety of factors, with the identifiable significant risk here including increased inventory of aged accounts receivable, due to the recent increase in financially distressed companies and individuals, and the generally poor economic conditions at present.

| Asset | Estimated Value | Estimate on Liquidation | Est. Liq. % | Note # |
|---|---|---|---|---|
| Cash | $ 2,945.05 | $ 2,945.05 | 100.0% | 1 |
| DTC Systems | $ 10,000.00 | $ 6,000.00 | 60.0% | 2 |

| | | | | |
|---|---|---|---|---|
| Automobiles | $  3,100.00 | $     0.00 | 0.0% | 3 |
| Attorney Trust Funds | $ 18,000.00 | $     0.00 | 0.0% | 4 |

GROSS LIQUIDATION PROCEEDS:    $ 8,945.05

Less Estimated Costs Associated with Asset Liquidation:

Administrative Costs                                    (     500.00)                    5

Chapter 7 Trustee Fee (25.0% of gross)        (1,644.51)                    6

Total Estimated Costs of Asset Liquidation:        $ ( 2,144.51)

EST. NET LIQUIDATION PROCEEDS:        $ 6,800.55

The following table sets forth the comparative recovery by the creditors of this estate, as under the Plan as compared with in a hypothetical liquidation under Chapter 7 of the Bankruptcy Code.

| Claim Holder | Total Claim | Est. Liq. Recovery | Est. Liq. % | Plan % | Note # |
|---|---|---|---|---|---|
| IRS (priority tax claim) | $     992.42 | $     992.42 | 100.00% | 100.0% | 7 |
| unsecured claims | $   6,928.93 | $ 5,808.13 | 83.82% | 100.0% | 8 |

As reflected on the comparative table immediately above, the Debtor believes that under the Plan, each holder of an Impaired Claim or Interest will receive or retain, on account of such Claim or Interest, property of a value that is not less than the value such holder would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. Accordingly, the Debtor believes the Plan satisfies the requirements of the best interests test set forth in Section 1129(a)(7) of the Bankruptcy Code. The following notes describe the significant assumptions reflected in the Liquidation Analysis. The values of assets used in this Liquidation Analysis are estimated values as of September 1, 2016.

Note 1 - This is the most recent cash on hand amount available, as of the petition date, July 8, 2016, less the amount of cash exempted (i.e. the amount of current available cash on hand that is not exempted by Debtor).

Note 2 - This is the $10,000.00 value of Debtors interest in DTC Systems, Inc. of which the Debtor did not schedule an exemption. Debtor estimates actual cash received from a liquidation auction setting to be $6,000.00.

Note 3 - This is Debtors automobiles, of which only $50.00 is not exempt.

Note 4 – This is the Attorney Trust Fund holding Debtors alleged cash. Because this property is in the custody and control of Debtors prior law firm, who claim the funds are fully earned, Debtor expects no liquidation cash available to the Chapter 7 Trustee.

Note 5 —$500.00 is estimated in general miscellaneous administrative expenses.

Note 6 - The Chapter 7 Trustee would be entitled to up to 25% of the first $5,000 liquidated, plus 10% of the remainder (up to $50,000).

Note 7 - This is the unsecured priority portion (priority tax claim) of $992.42 by the Internal Revenue Service. Under the Plan, 100% of the unsecured priority (priority tax claims) would be paid. Under the Liquidation Analysis, the net proceeds would pay this $992.42 in full, prior to payment in full of any unsecured claims, as well as prior to 5 years from the date Debtor filed his petition for relief.

Note 8 —All other unsecured claims against this estate are (non-priority) unsecured claims. Under the Plan, 100.0% of each of the allowed claims would be paid. Under the Liquidation Analysis, the net proceeds would pay 83.82% of each of these claims.

**XI. MEANS FOR IMPLEMENTATION OF PLAN/FEASIBILITY OF PLAN**

The Debtor intends to implement his Plan by continuing his business operations. The Debtor has prepared pro forma projections showing his projected revenue and available monthly cash flow (monthly net profit), from which he will fund his Plan, covering the time-period of the present through December 31, 2021. These pro forma projections are attached as Exhibit 3 to Debtors Request for Judicial Notice filed with this Disclosure Statement. These projections are based strictly upon the Debtor's actual and most-recent accounted and reported results, namely the most-recent six months (January 1, 2016 – June 30, 2016) of the Debtor's pre-petition history. Additionally, Debtor expects to generate business post-petition through DTC

Systems of at least $8,579.60 in gross business revenue (before taxes) per month to fund Debtors business expenses, Debtors income and draws, and thus plan payments. Debtor will also use income from his non-filing spouse, which will add an additional $175.00 per month to fund business expenses, income and draws, and plan payments. Total gross revenue is estimated at $8,759.27 per month (including $4.67 per month interest income). Debtor expects increased income based on Debtors litigation support, legal project management, and Securitization Analysis business (part of DTC Systems, Inc). For the most reasonably-based estimate available for this feasibility analysis, Debtor utilizes the January 2016 through June 2016 actual W-2 revenues received (all pre-petition), which are the months directly prior to the filing of Debtors petition, Debtors Plan of Reorganization and Debtors Disclosure Statement. in which Debtor focused his amount of time and effort on his employment, at a rate equivalent to all months going forward.

No assumptions are made that lack a material basis and foundation that Debtor has in fact actualized during the pre-petition period and most recently actualized on a monthly basis, and consequently the Plan is based upon a very cautious and conservative forward projection based on Debtor's actual recent pre-petition performance within the current challenging and difficult economic and market conditions. As such the Debtor considers the Plan certainly feasible, because the Debtor will be able to fully fund and perform the Plan from his ongoing operations, even if the current stressed environment and Debtor's now-established current actual performance and anticipated contractual performance therein continue forward, without any improvement in the duration of the Plan.

To address feasibility, Debtor utilizes a summary tables of required plan payments plus all other/living expenses in comparison with total revenues based upon his six most recent months, namely January 1, 2016 through June 30 2016. This approach demonstrates the plan to be feasible, as follows:

///

///

REQUIRED PLAN PAYMENTS:

| Class | Creditor(s) | Claim | Yearly Plan Payments |
|-------|-------------|-------|----------------------|
| 1 | State Farm Insurance | $ 22,496.65 | $ 3,275.40 (paid $272.95 monthly) |
| 2 | Auburn Lake Trails POA | $ 865.12 | $ 228.22 |
| 3 | Capital One | $ 956.44 | $ 355.58 |
| 4 | Credit One | $ 456.54 | $ 153.16 |
| 5 | Merrick Bank | $ 1,395.04 | $ 526.20 |
| 6 | Myron Corporation | $ 55.79 | $ 14.72 |
| 7 | Jan van Eck | $ 1,200.00 | $ 316.56 |
| 8 | Kevin Saitta | $ 2,000.00 | $ 527.59 |
| 9 | [general unsecured] | $ 0.00 | $ 0.00 |
| [tax] | Internal Revenue Service | $ 992.42 | $ 357.62 |
|  | Total Yearly Plan Payments: |  | $ 5,755.05 |

OTHER/LIVING EXPENSES:

| Expense | Monthly Amount |
|---------|----------------|
| Total living expenses | $ 3,266.46[2] (6-month average; 01/16–06/16 pre-petition) |
| Tax & insurance escrow on Property | $ 363.73 (est. $ 258.48 tax + $ 105.25 hazard ins.) |
| Homeowners Association Dues | $ 184.00 |
| Property maintenance and reserve | $ 100.00 (est. $ 50.00 upkeep + $ 50.00 reserve) |
| UST fees | $ 135.42 (est. $ 135.42 UST) |
| Misc. business and other expense | $ 2,352.90 (6-month average; 01/16-06/16 pre-petition) |
| Income Taxes | $ 1,500.00 (Estimate) |
| Unadjusted Total Other Expenses (Monthly): | $ 7,902.51 |
| Unadjusted Total Other Expenses (Yearly): | $ 94,830.12 |

[2] Without monthly payment for State Farm life insurance loan, which is included in the Total Yearly Plan Payments section

The $ 258.48 per month property tax is based upon current assessment valuations for tax purposes of Debtor's property, plus $ 105.25 per month current insurance for the real property, which requires hazard insurance.

TOTAL MONTHLY OUTLAYS: **$  8,382.10**

TOTAL YEARLY OUTLAYS: **$ 100,585.17**

| **Gross Revenue** | **Amount** |
|---|---|
| January 2016 | $  9,120.00 |
| February 2016 | $  9,120.00 |
| March 2016 | $  9,600.00 |
| April 2016 | $ 12,000.00 |
| May 2016 | $  9,850.00 |
| June 2016 | $  3,203.00 |

Monthly Gross Revenue[3]: $    8,754.60

Yearly gross revenue from employment or contract $ 105,055.20

TOTAL YEARLY GROSS REVENUES: **$ 105,055.20**

The past six months of employment and business revenues documents Debtors consistent income with a one-month decline (June) after Debtors W-2 contract with Mastech ended on May 27, 2016. Reference is also made to Debtors Statement of Financial Affairs Part 2, Number 4 which lists Debtors Gross Income from all sources (tax year 2015: Wages: $ 123,416.00 and business: $ 3,959.57; tax year 2014: Wages: $ 48,390.00 and business: $ 53,919.60), as well as Debtors non-filing spouse Gross Income from all sources (tax year 2015: Business: $ 8,370.66; tax year 2014: business: $ 26,260.00). All of these Gross Income amounts are for previous tax years 2014 and 2015. Debtor reasonably foresees and projects his revenues to continue at its present rate going forward.

SURPLUS (Average monthly revenues less average monthly expenses)    $    372.50

SURPLUS (Average yearly revenues less average yearly expenses)    $ 4,470.03

---

[3] Debtor does not include interest income, which historically (pre-petition) is approximately $4.67 per month

The projected revenue going forward is based upon six months' revenue received for established stability, which will generate a consistent revenue that totals $8,754.60 per month in gross business revenue. Debtor's Information Technology services with SharePoint are currently in high demand as is Debtors services providing litigation support, project management and Reverse Engineering and Failure Analysis provided to lawyers. The business revenue / employment income used for Debtors projections is gross (before taxes).

Projected costs going forward are based upon current total costs of Debtor and his business operations. Personal expenses are projected in this manner. Projected costs are the actual monthly expenses, where they are fixed and known, and where variable estimated as the average of known January 2016 through June 2016 monthly actual figures.

In summary, based on his most recent actual performance and history, the Debtor earns enough revenue, consistently on a monthly basis, which translates to enough after-tax net profit, that his total Plan debt repayment commitment / monthly expense commitment of $ 8,382.10 ($ 100,585.17 per year) is to be approximately 95.745% of Debtors before tax gross revenue [not including one-time administrative costs that may arise]. The 4.255% cushion (equating to approximately $ 372.50 per month or $ 4,470.03 per year) allows for the inevitable month-to-month variance and unanticipated one-time expenses that cannot be predicted. Most importantly, because the revenues and cash flows themselves are based upon a historical and/or actual present material basis, none of the revenue assumptions are speculative, hypothetical, or otherwise contingent on unsubstantiated assumptions, and thus judged by present-day actual-fact material conditions, the Plan is feasible.

Further this 95.745% percentage is projected to and with very high likelihood will decrease somewhat in the very near future upon the closure of the case and completion of U.S. Trustee fees. In the event Debtor closes the bankruptcy case early while continuing the plan outside of the bankruptcy court, Debtor will not be required to re-open the bankruptcy case to receive a discharge as Debtor is not entitled to a discharge (Debtor already received his discharge from a previous bankruptcy in December 2014).

1    Additionally, the priority tax claims of the IRS end in the 3rd year after plan confirma-

2    tion, leaving additional surplus for years 4 and 5 of the plan.

3    Finally, in addition to Debtors plan as described, Debtor will seek post-petition financ-

4    ing of his property (real and/or personal) in order to consolidate the unsecured claims in this

5    case and pay them off early (Classes 2 through 9 and the priority tax claim of the IRS). Debtor

6    will additionally seek to sell property (real and/or personal) to payoff the unsecured claims in

7    this case early (Classes 2 through 9 and the priority tax claim of the IRS).

8    Even though the pro forma projections are formulated very cautiously and conserva-

9    tively, without any assumptions of future results not historically realized in the recent prepeti-

10    tion time-period and without any trend-extrapolation of recent (prepetition) actual performance

11    and results, the future performance of the Debtor may either over perform or under perform

12    these projections. The Debtor's performance will depend upon his continued revenue from his

13    business activities and/or any employment at the same rate as at present (or as most recently

14    prior to filing the petition). Creditors should review the attached projections (Exhibit 3) care-

15    fully to reach their own decision regarding whether or not to vote for the Debtor's Plan.

16    ### XII. POST-CONFIRMATION MANAGEMENT

17    Debtor will continue to self-manage all of his business activities directly. As such no

18    disclosure regarding compensation to any corporate "insider" pursuant to Section 1129(a) of

19    the Code is required.

20    DATED:  July 8, 2016                    Respectfully Submitted,

21

22                                            By: _Daniel Major Edstrom Sr._

23                                            Daniel Major Edstrom Sr.,
                                              Debtor-in-Possession

24

25

26

27

28

28
Disclosure Statement
In re Daniel Major Edstrom Sr.; Case No. 2016-